UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELIX F., III[1] | : | Case No. 2:22-cv-2092 |
| | : | |
| Plaintiff, | : | District Judge Sarah D. Morrison |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff Felix F. brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #14) and the administrative record (Doc. #8).

**I.      Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on August 12, 2019, alleging disability due to several impairments, including three cracked vertebrae in the back and neck, type II diabetes, depression, bipolar, schizophrenia, substance abuse recovery, anxiety, attention-deficit/hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (Doc. #8-7, *PageID* #499). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a telephonic hearing before Administrative Law Judge (ALJ) Joseph A. Rose. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since August 12, 2019, the application date. |
| Step 2: | He has the following severe impairments: lumbar spine disorder; type II diabetes mellitus; hypertension; obesity; bipolar disorder; major depressive disorder; and unspecified psychosis. |
| Step 3: | He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … except no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Occasional stooping, kneeling, crouching, and crawling. Would need to use a cane when ambulating. Avoid concentrated exposure to extreme cold, excess vibration, pulmonary irritants, and moderate exposure to unprotected heights and moving mechanical parts. Limited to performing simple tasks and following |

> simple instructions. Can have superficial interactions with coworkers, supervisors, and the general public. That means no negotiation, arbitration, or supervisory authority. This person should be in a work environment with few if any workplace changes."
>
> He has no past relevant work.
>
> Step 5: He can perform a significant number of jobs that exists in the national economy.

(Doc. #8-2, *PageID* #s 49-58).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 12, 2019, the date the application was filed.  *Id.* at 58.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 46-58), Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #14).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.      Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff asserts that the ALJ erred in his evaluations of the medical source opinion provided by certified nurse practitioner, Gabrielle Delarose. (Doc. #10, *PageID #s* 909-12). Plaintiff also asserts that the ALJ erred in weighing the medical source opinions provided by the state agency's non-examining consultants. *Id.* at 912-14. In contrast, the Commissioner maintains that the ALJ appropriately assessed the evidence in making his decision and that substantial evidence supports the ALJ's decision. (Doc. #11).

#### A. Medical Opinions

Since Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

*Gabrielle Delarose, CNP*

In this case, Plaintiff alleges that the ALJ erred in his evaluation of the opinions provided by certified nurse practitioner, Gabrielle Delarose. (Doc. #10, *PageID* #s 909-12). Nurse Delarose began treating Plaintiff in October 2018 due to complaints of mood swings, mania, and hallucinations. (Doc. #8-8, *PageID* #s 617-18). In October 2020, Nurse Delarose authored two letters where she explained that Plaintiff was a patient of Access Ohio being treating for "uncontrolled symptoms of bipolar disorder and unspecified psychosis." *Id.* at 709. She further reported that she was treating Plaintiff on a weekly basis as he requested "due to the severity of his mental health conditions and history of frequent relapses and worsening mental health issues." *Id.* at 710. Nurse Delarose opined that, although Plaintiff "has made significant progress," she did not feel that he "would be capable of maintaining employment at that time." *Id.*

On January 27, 2021, Nurse Delarose completed a checklist form regarding Plaintiff's ability to perform work-related activities in light of his mental health impairments (Doc. #8-9, *PageID* #s 896-98). For most of the mental health functional categories, Nurse Delarose indicated that Plaintiff was markedly to extremely impaired. *Id.* Additionally, in response to a question as to whether Plaintiff would miss more than two days of work per month, Nurse Delarose marked "Yes." *Id.* at 898. She similarly affirmed that Plaintiff's condition would likely deteriorate if he were placed under the stress of job that requires eight hours of work a day for five days a week. *Id.* In support of these opinions, Nurse Delarose explained that "[Plaintiff] has been destabilized and has had worsening of [symptoms and] increases in stress, including worsening of auditory

[and] visual hallucinations in the past. His schizoaffective disorder tends to worsen with increased levels of stress or anxiety." *Id.*

The ALJ reviewed Nurse Delarose's opinions and ultimately found them "unpersuasive." (Doc. #8-2, *PageID* #55). In so finding, the ALJ stated that "[t]hese extreme and conclusory limitations are inconsistent with the record as well as Ms. Delarose's own treatment notes." *Id.* In support of this conclusion, the ALJ pointed to an exam that occurred three days prior to Nurse Delarose's medical statement where Plaintiff was documented as being "well-groomed, but overweight. He had average demeanor and eye contact. His facial expression was normal. His speech was clear. His thought process was logical. His mood was euthymic with a normal range of mood. His affect was appropriate his behavior was cooperative. Insight was fair. His intelligence estimate was noted to be average." *Id*. Lastly, the ALJ noted that Nurse Delarose failed to provide a narrative statement to support the extreme limitations she gave, causing him to conclude that, despite her treatment relationship with Plaintiff, "[Nurse] Delarose's statements are unsupported by the record." *Id*.

The ALJ's explanation for finding Nurse Delarose's opinions unpersuasive is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 416.920c—supportability and consistency. As for supportability, ALJ noted that Nurse Delarose provided extreme limitations but failed to support these limitations with a narrative explanation. (Doc. #8-2, *PageID* #55). He also noted that her opined limitations were unsupported by her own records. *Id*. Indeed, on the mental status examinations she completed, Nurse Delarose consistently documented normal and improving

7

clinical findings as well as improving mental health and sobriety milestones. (Doc. #8-8, *PageID* #s 648-69; 806-07; 810-13; 818-21, 881-87).

As for the consistency factor, the ALJ pointed out that Nurse Delarose's opinion was also inconsistent with the record. (Doc. #8-2, *PageID* #55).  Here, he pointed to a mental status exam that occurred three days before Nurse Delarose completed her checklist form with marked to extreme limitations in most areas of functioning. *Id*. Upon review, the record reflects that Plaintiff attended a mental status examination on January 24, 2020 where Debra Carr, LISW-S, documented Plaintiff as presenting well-groomed, but overweight, with average demeanor and eye contact, normal facial expressions, clear speech, logical thought process, euthymic with normal range of mood, appropriate affect, cooperative behavior, fair insight, and average intelligence. (Doc. #8-8, *PageID* #s 790-94).

Additionally, the ALJ had previously evaluated the different categories of mental functioning and found that Plaintiff only had moderate limitations while Nurse Delarose found limitations ranging from marked to extreme in these categories. (*Compare* Doc. #8-2, *PageID* #50 *with* Doc. #8-9, *PageID* #s 896-98).  In fact, in the context of discussing why Plaintiff did not satisfy any of the Listing criteria, the ALJ provided an in-depth explanation as to why he concluded that Plaintiff only had moderate limitations in the realms of mental functioning. (Doc. #50, *PageID* #50). This also supports the ALJ's conclusion that Nurse Delarose's opinion was inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to

8

repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 416.920c(b)(2) (requiring only that the ALJ articulate how he considered the supportability and consistency factors).

*State Agency Consultants*

Plaintiff also alleges that the ALJ erred in his review of the opinions provided by the state agency reviewing psychologists, David Dietz, Ph.D., and Jennifer Whatley, Ph.D. (Doc. #10, *PageID* #s 912-14). Dr. Dietz reviewed Plaintiff's records and found that he had severe mental impairments of depressive, bipolar, and related disorders and borderline intellectual functioning. (Doc. #8-4, *PageID* #s 336-37; 340-42). As for Plaintiff's level of mental functioning, Dr. Dietz opined that he was moderately limited in all functional areas. *Id.* at 336-67. With regard to Plaintiff's moderately limited ability to understand, remember, or apply information, Dr. Dietz explained that Plaintiff was "[c]apable of understanding and remembering simple (1-4 step) tasks." *Id.* at 341. As to Plaintiff's moderate limitation in his ability to concentrate, persist, or maintain pace, he opined that Plaintiff was "[c]apable of sustaining concentration [and] persistence in an environment where production standards [are] more flexible." *Id.* Additionally, because of Plaintiff's moderate limitations in his ability to interact with others, Dr. Dietz stated that Plaintiff was only "[c]apable of superficial interactions with coworkers, supervisors, and the general public." *Id.* at 342. Finally, in addressing Plaintiff's moderate impairment in his ability to adapt or manage himself, Dr. Dietz explained that he was "[c]apable of adapting to infrequent changes

in day to day job duties." *Id.* On reconsideration, Dr. Whatley reviewed Plaintiff's records and agreed with Dr. Dietz's assessment. *Id.* at 349-54.

In reviewing the opinions of all the state agency consultants, the ALJ stated:

The State Agency consultants are found to be persuasive. They opined that [Plaintiff] would be capable of less than light exertional level, and noted specifically that [Plaintiff] would not need an ambulatory device. This is inconsistent with the record, including the consultative examiner who noted that [Plaintiff] needs an ambulatory device. This supports the use of an ambulatory device, and the records supports a less than sedentary level. Mentally, they opined that [Plaintiff] is capable of superficial interactions with coworkers, supervisors, and the general public. He is capable of understanding and remember simple (1-4) tasks. He is capable of sustaining concentration & persistence in an environment where production standards are more flexible. This is somewhat vague, and does not define what flexible standards are. The record better supports the finding that limited to performing simple tasks and following simple instructions, and should be in a work environment with few if any workplace changes. This is supported by the mental status exams, and the subjective allegations of [Plaintiff]. While the consultants have program knowledge, they lack supportability with the consultative examiner, the mental status exams, and their opinions are vague. For these reasons, they are found to be unpersuasive.

(Doc. #8-2, *PageID* #s 54-55) (record citations omitted).

In response, Plaintiff argues that this analysis was internally inconsistent and confusing, pointing out that the ALJ simultaneously considered the state agency consultants' opinions to be "persuasive" and "vague." (Doc. #10, *PageID* #912). Plaintiff specifically takes issue with the ALJ's failure to account for the state psychologists' finding that Plaintiff be limited to "an environment where production standards [are] more flexible" because of his moderate limitations in his ability to concentrate, persist, or maintain pace. *Id.* at 912-14. Plaintiff's argument is well taken.

As an initial matter, the undersigned notes that the ALJ's failure to distinguish between the state agency physicians and psychologists makes his analysis difficult to understand. For example, he starts by broadly stating that "[t]he State Agency consultants are found to be persuasive[]" and then proceeds to assess the physical limitations of Plaintiff, including finding that their failure to account for Plaintiff's need for an ambulatory device was inconsistent with the finding of the consultative examiner. The ALJ then proceeds to assess the state agency consultants who opined on Plaintiff's mental limitations. Here, the ALJ takes issue with the state agency consultants' recommendation that Plaintiff be limited to an environment with flexible production standards because he finds it to be "vague" but otherwise adopts their opined mental limitations. Despite this, the ALJ concludes by stating that "the consultants[']" opinions are "unpersuasive" as they "lack supportability with the consultative examiner, the mental status exams, and their opinions are vague."(Doc. #8-2, *PageID* #55)

At first glance, it appears that the ALJ bifurcated his analysis of the state agency consultants with his analysis of the physicians providing physical limitations (Drs. Green and Torello) being assessed first and the psychologists providing mental limitations (Drs. Dietz and Whately) being assessed second. Such a reading would result in an understanding that the ALJ's opening statement that "[t]he State Agency consultants are found to be persuasive" as referring only to the first physicians, Drs. Green and Torello. Such a reading would, in turn, suggest that the ALJ's concluding statement, *i.e.*, that "the consultants[']" opinions are "unpersuasive" as they "lack supportability with the consultative examiner, the mental status exams, and their opinions are vague[,]" as referring only to the state psychologists, Drs. Dietz and Whately.

11

However, such a reading is confusing because it suggests that the ALJ rejected the opinions of Drs. Dietz and Whately (as opposed to Drs. Green and Torello) because they lacked supportability with the consultative examiner. However, the consultative examiner in this case, Dr. Herbert A. Grodner, M.D., only provided an opinion on Plaintiff's physical level of functioning. (*See* Doc. #8-8, *PageID* #s 693-97). In fact, apart from acknowledging that Plaintiff had mental health diagnoses, Dr. Grodner's only statement on his mental impairments was that "[t]hose particular conditions need to be evaluated by the appropriate specialist to determine their impact on [Plaintiff's] ability to perform various activities." *Id.* at 697.[3] Thus, the ALJ would have no basis for comparing the mental functioning limitations provided by Drs. Dietz and Whately to the physical limitations provided by Dr. Grodner, thereby suggesting that the ALJ's concluding statement was meant to address the "unpersuasive[ness]" of all of the state agency consultants. Such an alternative reading is consistent with the fact that the ALJ had previously criticized the physical limitations provided by Drs. Green and Torello for omitting the requirement that Plaintiff have an ambulatory aid, as provided by Dr. Grodner. However, this alternative reading is also problematic in that it would mean that the ALJ found all of the state agency consultants' opinions to be persuasive at the start of his analysis and unpersuasive at the end of his analysis.

In other words, the way in which the ALJ has presented his analysis of the state agency opinions is either unsupported by the evidence or internally inconsistent. In either event, the analysis is such that the Court is unable to trace the path of the ALJ's reasoning and to ascertain

---

[3] While not raised by Plaintiff, it appears that the ALJ never articulated the amount of weight he was assigning to the opinions of Dr. Grodner, in contravention of the regulations. 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]").

the amount of weight he attributed to each opinion, in violation of the regulations. *See* 20 C.F.R. § 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); *Allen v. Astrue*, No. 5:11–cv–95, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").

The ALJ's failure to clearly articulate his assessment of the state agency consultants' opinions is further demonstrated by the inadequate discussion he provided regarding the omission of the flexible standards limitation from Plaintiff's RFC. To be sure, even if it were clear that he found the opinions of Drs. Dietz and Whately to be persuasive, the ALJ was not required to adopt their findings verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). "However, if the ALJ accepts a medical opinion but does not include a restriction recommended by that expert in the RFC, the ALJ must explain why he did not do so." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020).

In this case, the ALJ rejected Drs. Dietz's and Whately's recommendation that Plaintiff be restricted to an environment with flexible production standards but otherwise adopted their opined limitations into Plaintiff's RFC. In rejecting the flexible production standards limitation, the ALJ reasoned that the limitation was "somewhat vague[] and does not define what flexible standards are." (Doc. #8-2, *PageID* #55). However, instead of defining the term or otherwise accommodating the limitation, the ALJ opted to simply omit the recommendation from Plaintiff's RFC. Further compounding the confusion is the fact that the ALJ had previously reached the same conclusion as Drs. Dietz and Whately in that Plaintiff's severe mental impairments resulted in a moderate limitation in his ability to concentrate, persist, and maintain pace. *See id*. at 50. Significantly, the ALJ did not explain elsewhere in his opinion why the omitted limitation lacked supportability or consistency. Thus, the Court is left to speculate as to why the ALJ would agree that Plaintiff had moderate limitations in his ability to concentrate, persist, and maintain pace but omit the only functional limitation that Drs. Dietz and Whately provided to accommodate that limitation.

Finally, to the extent that the Commissioner contends that the ALJ did accommodate this limitation with the remaining mental functioning limitations, her argument is without merit. The only other mental limitations that the ALJ included in Plaintiff's RFC were to limit him to (1) performing simple tasks and following simple instructions; (2) having superficial interactions with coworkers, supervisors, and the general public; and (3) working in environment with few if any workplace changes. (Doc. #8-2, *PageID* #51). Each of these limitations were provided by Drs. Dietz and Whately to address a functional area distinct from the functional area addressed by the

flexible production standards limitation. Specifically, the limitation to performing simple tasks and following simple instructions was formulated to address Plaintiff's moderate limitation in his ability to understand, remember, or apply information; the limitation to having superficial interactions with coworkers, supervisors, and the general public was formulated to address Plaintiff's moderate limitation in his ability to interact with others; and the limitation to working in an environment with few if any workplace changes was formulated to address Plaintiff's moderate limitation in his ability to adapt and manage himself. (*See* Doc. #8-4, *PageID* #s 340-42; 349-54). Thus, absent from the RFC is an accommodation for the functional area that the ALJ also found to be moderately limited and for which the flexible standards limitation was intended to accommodate, that is, the ability to concentrate, persistence, and maintain pace. *See id.*; *see also* Doc. #8-2, *PageID* #50.

Accordingly, in omitting the flexible production standards limitation from Plaintiff's RFC without an adequate explanation, the ALJ has prevented the Court from being able to conduct a meaningful review to determine whether substantial evidence supports his decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Cote v. Colvin*, No. 16–cv–57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment.").

**B.      Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted were the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence

16

is lacking. However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. #10) be **GRANTED;**

2. The Commissioner's non-disability finding be **VACATED**;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case be terminated on the Court's docket.

July 25, 2023

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).